No. 84-457

IN THE SUPREME COURT OF THE STATE OF MONTANA

1985

EARL C. CLOPTON; CHARLES McCUAIG;
KATHY WORLEY; FLOYD EDWARDS; JOAN
SORVIG; et al.,

Plaintiffs and Appellants,

-vs-

THE MADISON COUNTY COMMISSION con-
sisting of MARIE McALEAR, WILLIAM
DRINGLE and JOHN ALLHANDS, Commis-
sioners, et al.,

Defendants and Respondents.

MONTANA DEPARTMENT OF HEALTH AND
ENVIRONMENTAL SCIENCES,

Intervenor and Respondent.

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Madison,
The Honorable Frank Davis, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Meloy Law Firm; Peter M. Meloy, Helena, Montana

For Respondent:

Loren Tucker, County Attorney, Virginia City,
Montana
Steve Perlmutter, Dept. of Health & Environmental
Sciences, Helena, Montana

Submitted on Briefs: March 14, 1985

Decided: June 13, 1985

Filed: 1985

*Ethel M. Harrison*

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

The appellants, citizens of Madison County, brought an action to enjoin the respondent, the Madison County Commission, from making expenditures and collecting service charges for a garbage disposal district. The respondent, Montana Department of Health and Environmental Sciences, was granted leave to intervene as a party defendant. The respondents answered, moved to dismiss, and moved to quash. At the hearing on an order to show cause why the respondent, Madison County Commission, should not be restrained from making expenditures and collecting fees to operate a waste disposal district the District Court found sufficient evidence to decide the case on the merits. The District Court denied the appellants' requested relief and dismissed. The appellants moved for a new trial or to amend judgment. The motion was denied. This appeal followed.

We affirm.

In the 1970's, Congress and the Montana Legislature substantially changed the law concerning the proper disposal of solid waste. The applicable law provided that all disposal sites must either be operated in compliance or be closed by 1982. From reading the record, it does not appear that Madison County had the same sense of urgency as did Congress and the legislature. From the first discussion at its meeting in November, 1977, until its ratification of the contracts to handle waste disposal in February, 1984, the governing bodies of Madison County treated the matter with a certain remote detachment characteristically accorded a subject with low priority. Things did not really get moving

until the State threatened "administrative action" in July, 1983, to close the dump sites at those towns not meeting "even minimal requirements of the Montana Solid Waste Management Act." Only Ennis was found to be in full compliance with the act. The threatened State action is evidenced by letters from the Montana Department of Health and Environmental Sciences to the Board of County Commissioners of Madison County July 7, 1983, and to the towns of Virginia City, July 5, 1983, Twin Bridges, July 5, 1983, and Sheridan, Montana, July 5, 1983.

In 1979, Madison County, then operating as a charter form of government, had begun a process of planning and establishing a unified county-wide refuse disposal district and system. In Resolution 3-79, dated May 8, 1979, the county set forth its intent and stated that it was acting pursuant to §§ 7-13-201 through 7-13-243, MCA, which set forth a procedure for establishing refuse disposal districts. A public hearing on this resolution was held June 12, 1979, at which time protests were made by citizens of Madison County. No action was taken on the protests.

Madison County then passed Ordinance 1-80, dated February 11, 1980. This ordinance stated that it created a solid waste management system. Ordinance 1-80 made no reference to Resolution 3-79. It referred to state law only insofar as it stated that charges for the service would be collected with real property taxes in conformity with § 7-13-233, MCA.

Over two years later, on August 10, 1982, Madison County proposed Ordinance 5-82 which was to establish a refuse disposal district and operating provisions for the refuse disposal system. This ordinance recognized the prior

- 3 -

ordinances and resolutions on the subject. This ordinance was not adopted, that is, it was not finally acted on. However, Madison County did pass Ordinance 7-82 on December 28, 1982, and, for the most part, Ordinance 7-82 was identical to Ordinance 5-82.

In the interim between Madison County addressing Ordinance 5-82 and passage of Ordinance 7-82 the Madison County voters elected to change their charter form of government back to a commission form of government. This change became effective in early 1983. This new commission form of government approved and confirmed the refuse disposal fees set forth in Ordinance 7-82. This was done in September, 1983.

On November 30, 1983, due and payable notices were sent by Madison County to residents with respect to the assessments to fund the refuse disposal district system. By February 1, 1984, Madison County had contracted with several businesses to provide services for the refuse disposal district.

Two issues are presented for review. The first issue is whether the District Court erred in concluding that Madison County substantially complied with the law relating to the establishment of a refuse disposal district. We find that the District Court did not err. We therefore do not need to reach the second issue, which is, whether the District Court erred in ruling that the action was untimely.

The main issue here is whether or not §§ 7-13-201 through 7-13-243, MCA, are mandatory requirements for a charter form of government establishing a refuse disposal district. Appellants in this case claim that the Commission failed to follow the statutes or the rules of the charter in

- 4 -

the following respects: (a) failed to adopt the required resolution of intention as provided in § 7-13-204, MCA; (b) failed to obtain the proper City concurrence (it was the intention of the County to include the cities in the district) as provided in § 7-13-203(2), MCA; (c) failed to rule on protests as provided by § 7-13-211, MCA; (d) failed to hold a hearing as provided in § 7-13-231(1), MCA; (e) failed to publish public notices as required by the various sections; (f) failed to wait until the service commenced in the district before collecting the fee as provided in § 7-13-233, MCA; (g) failed to follow its own charter requiring the vote of people before taxes are imposed (Art. VIII, § 1, Charter of Madison County, State of Montana, 1976).

The appellants, citizens of Madison County, assume that the respondent, Madison County, was obligated to abide by §§ 7-13-201 through 7-13-243, MCA, when it established a refuse disposal district and system. Much of appellants' argument is based on this assumption, however, the assumption is incorrect.

Madison County became a charter form of government in 1976. This was several years prior to the initiation of the plans for a refuse disposal district involved here. A charter form of government possesses self-governmental powers, § 7-3-702, MCA, and it may exercise any power not prohibited by the constitution, law, or charter. Section 7-1-101, MCA. Neither the Montana Constitution of 1972, state law, nor the Madison County Charter prohibited Madison County from exercising a power to establish a refuse disposal system. Madison County as a charter form of government with self-government powers was not subject, by law, to comply with §§ 7-13-201 through 7-13-243, MCA, on creation of a

refuse disposal district. These sections apply to the establishment of a refuse disposal district by governments that are of general power status, not those with self-government status. See §§ 7-1-111 through 7-1-114, MCA, for limitations on governments possessing self-govenment powers--establishing a refuse disposal district does not fall within any of the proscribed powers.

It could have been argued that §§ 7-13-201 through 7-13-243, MCA, require a government to provide a service and therefore fall under § 7-1-114(f), MCA, which subjects a local government with self-government powers to any law directing or requiring a local government to provide a service. That argument was not made or contested by the parties to this action. We find, though, that to dispel doubt about it, §§ 7-13-201 through 7-13-243, MCA, do not direct or require a local government to provide a service within the meaning of § 7-1-114(f), MCA. Sections 7-13-201 through 7-13-243, MCA, contain provisions that are not consistent with the directives or requirement anticipated by § 7-1-114(f), MCA. For example, § 7-13-211, MCA, allows sufficient public protest to bar action on a refuse disposal district. Also we find that a county would not necessarily be required to establish a county wide refuse disposal district which provided services to municipalities within the county if those municipalities had adequate service already in effect. We therefore hold that Madison County was not obligated to comply with the provisions in §§ 7-13-201 through 7-13-243, MCA.

Madison County was, of course, required to follow proper legislative procedures in establishing a refuse disposal district as it would be in any legislative action. A local

government with self-government powers is subject to all laws establishing legislative procedures as requirements for units of local govenment. Section 7-1-114(c), MCA. The legislative requirements for units of local government that apply here are set forth in § 7-5-103, MCA, which reads:

"7-5-103.    Ordinance requirements.    (a)    All ordinances shall be submitted in writing in the form prescribed by resolution of the governing body.

"(2)    No ordinance passed shall contain more than one comprehensive subject, which shall be clearly expressed in its title, except ordinances for codification and revision of ordinances.

"(3)    An ordinance must be read and adopted by a majority vote of members present at two meetings of the governing body not less than 12 days apart. After the first adoption and reading, it must be posted and copies made available to the public.

"(4)    After passage and approval, all ordinances shall be signed by the chairman of the governing body and filed with the official or employee designated by ordinance to keep the register of ordinances."

We find that Madison County substantially complied with these requirements. Ordinance 7-82 was submitted in writing, it contained one comprehensive subject, it was read and passed at two readings, and it was signed by the chairperson of the governing body. The public was notified of the first reading on December 8, 1982 by posting. The record does not show whether notice was posted after the first reading, however, if the procedure was deficient in that aspect, it would not warrant a finding that the entire project be invalid in this instance because of the numerous resolutions, ordinances, notices, and public hearings on this matter.

The appellants also argue that the respondents failed to follow the Madison County Charter that requires a vote of the people before any form of tax is imposed. We find that no injustice will be done by disposing of this argument without

- 7 -

reaching the underlying issue of whether this assessment was actually a tax within the meaning of that term in the Madison County Charter. The new commission form of government of Madison County approved and confirmed the refuse disposal fees set forth in Ordinance 7-82. This was done in September, 1983. The due and payable notices for the assessments for the refuse disposal district and system were sent out November 30, 1983. Compliance with the Madison County Charter was not required at this time because it was no longer in effect and the new commission form of government had essentially ratified the fee assessment proposal.

We affirm.

Justice

We Concur:

Justices

- 8 -